UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
                         :

**ABDULLAH SPENCEREL,**           :

                         :

               Plaintiff,    :   **MEMORANDUM**

                         :   **DECISION AND ORDER**

        **- against -**      :

                         :   19-CV-6688 (AMD) (LB)

**DR. RAMOS, PA PATRICK, PA ANTOINNE,**  :

**NURSE OKAN, OFFICER MALIK, OFFICER**

**GRIGS, OFFICER CRUZ, OFFICER MAHMUD,**  :

**OFFICER LOWE, CAPTAIN RAWLINGSON,**

**CAPTAIN BARTON, CAPTAIN HAMILTON,**  :

**CAPTAIN WILLIAMS, CAPTAIN VARGAS,**

**CAPTAIN DAWKINGS, CAPTAIN HARVEY,** and :

**DEPT. TYNDALE,**

                         :

              Defendants.   :
---------------------------------------------------------------- X

**ANN M. DONNELLY,** United States District Judge:

Before the Court is the defendants' motion to dismiss the *pro se* plaintiff's complaint. (ECF No. 40.)  For the reasons that follow, the defendants' motion is granted.

BACKGROUND[1]

The plaintiff, who is currently incarcerated at Rikers Island, alleges in a 54 page complaint that Department of Corrections ("DOC") officers and medical staff assaulted him, stole his property and allowed other inmates to intimidate and harass him because he refused to join a "secret society."

---

[1] For purposes of this motion, I accept as true the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  *Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012).

When the plaintiff arrived at the North Infirmary Command at Rikers Island ("NIC") in 2008, he was approached by members of a "secret society known as the Shroud of Turin."  (ECF No. 1 at 2.)  The society, made up of inmates, officers and nurses, had been "track[ing]" him "for years" and needed his help to "crack the sundry 'Holy Grail' codes in the six (6) so-called U.S. legal documents of the Mayflower-compact, the Association of the Sons of Liberty, Olive Branch Petitioner, Declaration of Independence, Articles of Confederation, and United States Constitution. . . ."  (*Id.* at 2-4.)  Despite repeated demands, the plaintiff declined to join the secret society.  (*Id.* at 2.)  However, in 2016, he began "the thrilling task" of conducting his own research of these historical documents and found that they contained "encrypted maps and lore on the Holy Grail."  (*Id.* at 3.)

After this discovery, on May 25, 2016, the plaintiff fell from his bed and injured his shoulder, head, neck and back.  (*Id.* at 4.)  Medical staff treated him for his injuries, but the plaintiff "fell off [a] table" and was "left on the clinic floor" for five hours.  (*Id.*)  He screamed for help, and eventually "Captain Dawkins came in and threatened" him, saying that a nurse would file sexual harassment charges against him if he did not get up.  (*Id.*)  James Patrick, a physician's assistant, then moved the plaintiff back to his cell and put his bed on the floor, where the plaintiff "languished… in [his] own feces" for weeks as fellow inmates assaulted him and "medical staff . . . fomented rebellion."  (*Id.* at 5.)  The plaintiff alleges that this treatment was based on his "race, nationality and disability along with sexual harassment and extreme pressure to join the secret society."  (*Id.* at 6.)  DOC staff members told him that they would take better care of him if he joined the society.  (*Id.*)

The plaintiff was eventually moved to a medical bed, where he "languished for months enduring the same attacks and discrimination."  (*Id.*)  The plaintiff asked "Dr. Ramos" if he

could be transferred to a different dorm; Dr. Ramos told him that he could only be transferred if he joined the secret society.  (*Id.*)  The Director of Nursing and Nurse Okan limited his access to medical supplies, and wrote notes on the plaintiff's medical chart suggesting that he was not a paraplegic and was capable of walking.  (*Id.* at 9.)  Dr. Ramos also believed the plaintiff was feigning a disability.  (*Id.* at 12.)

Around this same time, "Captain Williams and Officer Lowe" approached the plaintiff and told him that if he did not join the secret society, they would take his belongings.  (*Id.* at 7.) Captain Williams was particularly interested in taking the plaintiff's "sensitive classified U.S. government documents," in which the plaintiff had found "secret coded messages."  (*Id.* at 8.) The plaintiff concealed his research in three pillowcases.  (*Id.*)  Captain Barton stole these pillowcases while the plaintiff was in the hospital.  (*Id.* at 8-9.)

The plaintiff then asked to be moved to a nursing home, but his request was denied based on his "race, nationality (namely Moorish) and . . . disability, along with the sexual harassment pressures of joining [the] secret sex cult of freemasonry."  (*Id.* at 10.)  On March 12, 2018, DOC officers gave him an ultimatum: that he had to join the secret society or be sent "back to dorm 3." (*Id.* at 11.)  The plaintiff experienced a "syncopy episode" and fell from the bed to the floor; the officers then moved him to "dorm 3" and medical staff threw him on a metal bed.  (*Id.*)  The plaintiff was transferred to Bellevue Hospital for a medical examination, where he was incorrectly placed in a "psych ward" and was "brutally attacked by a MS-13 member."  (*Id.*)

When the plaintiff returned to Rikers Island, the attacks against him continued.  (*Id.* at 13-14.)  On September 27, 2018, a doctor classified him as a security risk, and he was moved into a new cell; after he was moved, he stopped receiving "medical services."  (*Id.* at 14.) Sanitation workers were given secret orders to take property from his new cell, and to leave

3

notes that read "Don't tell." (*Id.* at 15.)  On July 8, 2019, "Ahmed" followed a "secret order" and took the last of the plaintiff's property. (*Id.*)  Inmates Perez, Ortiz, Monk and Chambers continued to "terrorize" the plaintiff. (*Id.* at 22.)

The plaintiff also lodges multiple complaints about his general treatment by the DOC. For example, he alleges that he has been denied access to prison resources, including medical care, disability services, and the library, that his cell had not been cleaned, and that DOC officers issued death threats against him. (*Id.* at 23-35.)

## PROCEDURAL HISTORY

On November 21, 2019, the plaintiff filed this action against the DOC, numerous DOC employees, and Rikers Island inmates. (ECF No. 1.)  On February 6, 2020, I dismissed the DOC and all of the plaintiff's fellow inmates from the suit as improperly named parties. (ECF No. 5 at 5.)  I also dismissed multiple defendants pursuant to Federal Rule of Civil Procedure 8 because the plaintiff failed to explain what they did to violate his civil rights, and I dismissed the plaintiff's claims against Officer Loriano and Mr. A for allegedly denying the plaintiff access to the courts because the plaintiff did not claim the defendants' actions hindered his ability to make legal filings. (*Id.* at 6-7.)  I allowed the plaintiff's claims against the remaining defendants to proceed, and granted the plaintiff leave to amend his complaint as to the defendants dismissed pursuant to Rule 8. (*Id.* at 8-9.)

The plaintiff did not file an amended complaint.  Magistrate Judge Lois Bloom held a telephone conference on July 24, 2020, in which the plaintiff refused to participate.  Judge Bloom set a motion schedule, directing the defendants to file their motion to dismiss by August 24, 2020 and the plaintiff to file his response by September 24, 2020.  She also warned the

plaintiff that she would recommend that the case be dismissed if the plaintiff did not participate in it.

The defendants filed their motion on August 24, 2020.  (ECF No. 38.)  The plaintiff did not respond.  I granted the plaintiff an extension to October 30, 2020, and warned him that I would deem the defendants' motion fully briefed if he did not respond.  The plaintiff did not respond by October 30, 2020, and I deemed the defendants' motion fully briefed as of November 9, 2020.

## STANDARD OF REVIEW

At the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint.  *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).  Although courts must read *pro se* complaints with "special solicitude," and interpret them liberally to raise the "strongest arguments that they suggest," *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474-76 (2d Cir. 2006) (internal quotation marks omitted), a complaint still must plead enough "facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).  While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555).  Similarly, a complaint is insufficient to state a claim "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## DISCUSSION

### I.   Section 1983 Claims

Giving the complaint its most liberal interpretation, the plaintiff brings this action under

42 U.S.C. § 1983, alleging deliberate indifference to his medical needs, inadequate conditions of

confinement, destruction of property, failure to protect and a violation of his right to access the

courts.

### a.   Statute of Limitations

The defendants argue that the plaintiff's § 1983 claims should be dismissed because they

are untimely.  Section 1983 itself does not provide a statute of limitations, *see* 42 U.S.C. § 1983,

but "courts apply the statute of limitations for personal injury actions under state law."  *Hogan v.*

*Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) (citations omitted).  "For Section 1983 actions filed in

New York, the applicable statute of limitations is Section 214 of the Civil Practice Law and

Rules ('C.P.L.R.'), which allows three years to file suit."  *Jones v. Bay Shore Union Free Sch.*

*Dist.*, 170 F. Supp. 3d 420, 436 (E.D.N.Y.), *aff'd*, 666 F. App'x 92 (2d Cir. 2016) (citing N.Y.

C.P.L.R. § 214 (McKinney's 2016)).  A cause of action under Section 1983 accrues when the

plaintiff "knows or has reason to know of the injury which is the basis of his actions."  *Pearl v.*

*City of Long Beach*, 296 F.3d 76, 80 (2d Cir.2002) (internal quotation marks and citations

omitted).  "The crucial time for accrual purposes is when the plaintiff becomes aware that he is

suffering from a wrong for which damages may be recovered in a civil action."  *Singleton v. City*

*of New York*, 632 F.2d 185, 192 (2d Cir. 1980).

I agree with the defendants as to the plaintiff's claim of injuries allegedly sustained on

May 25, 2016.  However, reading the plaintiff's complaint in the light most favorable to his

claims, many of the alleged violations took place within the limitations period.  As the

defendants themselves note in their motion to dismiss, the plaintiff is seeking redress for actions that took place on "three separate occasions." (ECF No. 40 at 6.) While these actions may all relate to the plaintiff's alleged refusal to join the secret society, they each imposed unique harms. The plaintiff could not have predicted at the time he fell from his bed in 2016 that DOC employees would harass him well into 2018, nor could he have predicted at that time that DOC employees would take his belongings or deny him medical care. *Veal v. Geraci*, 23 F.3d 722, 724 (2d Cir. 1994) ("[T]he claim accrues when the alleged conduct has caused the claimant harm and the claimant knows or has reason to know of the allegedly impermissible conduct and the resulting harm."). The plaintiff's claims regarding the incidents that occurred on March 12 and September 27, 2018 do not violate the statute of limitations, nor do any of the plaintiff's claims that may have occurred after November 21, 2016.

    *b.  Rule 8*

    The defendants also argue that the plaintiff's complaint should be dismissed for failure to comply with Rule 8. Rule 8 requires a complaint to contain "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed R. Civ. P. 8(a)(2); *see also Iqbal*, 556 U.S. at 678 (Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (citations omitted). The complaint must include enough facts so that each defendant will understand the nature of the plaintiff's complaint and know whether there is a legal basis for recovery. *See Twombly*, 550 U.S. at 555–56. "The basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike." *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019) (internal quotation and citation omitted). "[C]omplaints which ramble, which needlessly speculate, accuse and condemn, and which contain circuitous diatribes far removed from the heart of the claim do not comport with [Rule 8] and must be dismissed." *Coon v.*

7

*Benson*, 2010 WL 769226, at *3 (S.D.N.Y. March 8, 2010) (internal quotation marks omitted);

*accord Prezzi v. Schelter*, 469 F.2d 691 (2d Cir. 1972) (the complaint "contained a labyrinthian

prolixity of unrelated and vituperative charges that defied comprehension").

The plaintiff's complaint is neither short nor plain.  In 54 pages, the plaintiff tells an

elaborate story of a secret society's plot against him, without clearly stating how the defendants

have violated his civil rights.  *See, e.g., Salahuddin v. Cuomo*, 861 F.2d 40, 43 (2d Cir. 1988)

(noting that under Rule 8(a)(2), the statement of claim "should be short because [u]nnecessary

prolixity in a pleading places an unjustified burden on the court and the party who must respond

to it because they are forced to select the relevant material from a mass of verbiage" (citation and

quotation omitted)); *Middleton v. United States*, 2012 WL 394559, at *3 (E.D.N.Y. Feb. 7, 2012)

(dismissing a complaint under Rule 8 because the plaintiff's "rambling, conclusory, possibly

delusional allegations [were] so vague as to make it impossible for defendants to frame a

response" (internal quotation marks omitted)); *Ramkissoon v. Blackstone Grp. L.P.*, 2011 WL

6817935, at *3 (E.D.N.Y. Dec. 28, 2011) (dismissing a complaint where the allegations were

"the product of delusion or fantasy").  The plaintiff's complaint is lengthy, difficult to follow and

contains a significant amount of unnecessary detail, including multiple pages of DOC inmate

statement forms.  *The Annuity, Welfare and Apprenticeship Skill Improvement & Safety Funds of

the Int'l Union of Operating Eng'rs Local 15, 15A, 15C & 15D, AFL-CIO v. Tightseal Constr.

Inc.*, 2018 WL 3910827, at *12 (S.D.N.Y. Aug. 14, 2018) ("[C]ourts in this Circuit have

dismissed complaints that are unnecessarily long-winded, unclear, or conclusory.")

Moreover, the plaintiff cites no law in the complaint, and does not set forth any legal

theory under which he is entitled to relief.  *See Iqbal*, 556 U.S. at 678 (Rule 8 "demands more

than an unadorned, the-defendant-unlawfully-harmed-me accusation."); *Twombly v. Bell*, 425

F.3d 99, 106 (2d Cir. 2005) ("fair notice" is "'that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so that it may be assigned the proper form of trial.'") (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)); *see also Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991). The plaintiff's pleading does not give the defendants adequate notice of the claims against them, or permit them or the court to determine whether there is a legal basis for recovery. Accordingly, the plaintiff's remaining claims are dismissed because he has not stated a claim under Rule 8.[2]

## II.   State Law Claims

To the extent the plaintiff is attempting to bring state law claims against the defendants—and it is not clear that he is—I decline to exercise jurisdiction. "Where a court dismisses all claims over which it has original jurisdiction, it may, in its discretion, decline to exercise supplemental jurisdiction over remaining claims." *Wolfinger v. Consolidated Edison Co. of New York, Inc.*, No. 17-CV-1710, 2018 WL 3637964, at *12 (E.D.N.Y. July 31, 2018) (citing 42 U.S.C. § 1367(c)(3)). In deciding whether to exercise supplemental jurisdiction, district courts should balance the values of judicial economy, convenience, fairness, and comity. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."); *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 123 (2d Cir. 2006) ("[F]ederal policy concerns may argue in favor of

---

[2] The City represents that defendant Jaime Vargas is on military leave, and thus not available to discuss the case, and has not joined the motion to dismiss. (ECF No. 39.) I dismiss the claims against him because "the rulings in this opinion would apply with equal force" to Captain Vargas's own motion to dismiss. *Le Bouteiller v. Bank of New York Mellon*, No. 14 Civ. 6013, 2015 WL 5334269, at *11 n.6 (S.D.N.Y. Sept. 11, 2015); *see also Virtual Dates, Inc. v. Afternic.com, Inc.*, No. 01 Civ. 4023, 2001 WL 1646451, at *2 (S.D.N.Y. Dec. 20, 2001) (dismissing claims against defendant who did not join in other defendants' motion to dismiss because "precisely the same points control the claims against it").

exercising supplemental jurisdiction even after all original-jurisdiction claims have been dismissed."); *see also Klein & Co. Futures. Inc. v. Bd. of Trade*, 464 F.3d 255, 262 (2d Cir. 2006) ("[W]here, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims.").

### III.     Leave to Amend

"A pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks omitted).  In my February 2020 decision, I permitted certain claims to go forward against the defendants because it was possible, giving the plaintiff the benefit of any conceivable doubt, to discern colorable § 1983 claims.  Because I agree with the defendants that Rule 8 requires dismissal of those claims as well, I give the plaintiff an additional opportunity to amend his complaint.  The plaintiff will have thirty days from the date of this order to amend his complaint to comply with Rule 8.  *See Daley v. Town of Orchard Park*, 2017 WL 417248, at *6 (W.D.N.Y. Jan. 30, 2017) ("When a court dismisses a complaint under Rule 8(a), the court must allow leave to amend the complaint unless leave to amend has previously been given and the successive pleadings remain prolix and unintelligible, or where the substance of the claim pleaded is frivolous on its face.") (citation omitted).

If the plaintiff chooses to file an amended complaint, he must comply with Rule 8; that is, he must file "a short and plain statement of the claim showing that [he] is entitled to relief."  Fed R. Civ. P. 8(a)(2).  He must name the individual DOC officers or employees who he claims deprived him of his constitutional rights.  He must also specify what claims he brings against each defendant, plead facts to support those claims, state the specific injuries that he suffered and

include the dates on which the injuries occurred.  *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (A plaintiff must demonstrate each defendant's direct or personal involvement in the actions that are alleged to have caused the deprivation of the plaintiff's constitutional rights.).  In addition, the complaint must include an allegation of "a tangible connection between the acts of the defendant and the injuries suffered."  *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986); *Andino v. Fischer*, 698 F. Supp. 2d 362, 381 (E.D.N.Y. 2010).

The new complaint must be captioned "Amended Complaint" and bear the same docket number as this Order (19-CV-6688 (AMD) (LB)).  The plaintiff is advised that any amended complaint that he files will completely replace the original complaint, so he should not rely on any allegations in the original complaint he filed.  If the plaintiff does not comply with this Order within the time allowed, the action will be dismissed, and judgment will enter.

**CONCLUSION**

The defendants' motion to dismiss is granted and the plaintiff is granted leave to amend within 30 days of this Order being entered.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore, *in forma pauperis* status is denied for the purpose of any appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).  The Clerk of Court is respectfully directed to mail a copy of this Order to the *pro se* plaintiff.


**SO ORDERED.**

        s/Ann M. Donnelly
       _____
       ANN M. DONNELLY
       United States District Judge


Dated: Brooklyn, New York
      November 20, 2020